250 P.3d 1206

**NEEME SYSTEMS SOLUTIONS, INC., Plaintiff/Appellant/Cross–Appellee,**

v.

**SPECTRUM AERONAUTICAL, LLC, Defendant/Appellee/Cross–Appellant.**

**No. 1 CA–CV 10–0149.**

Court of Appeals of Arizona, Division 1, Department C.

March 24, 2011.

Stinson Morrison Hecker L.L.P. By Steven H. Williams, Brian J. Palmer, and Sharon Ng, Phoenix, Attorneys for Plaintiff/Appellant/Cross–Appellee.

Gallagher & Kennedy, P.A. By Thomas A. Maraz and Timothy W. Overton, Phoenix, Attorneys for Defendant/Appellee/Cross–Appellant.

## OPINION

BROWN, Judge.

¶ 1 Neeme Systems Solutions, Inc. ("Neeme") obtained a default judgment against Spectrum Aeronautical, LLC ("Spectrum") in this action while a similar suit between the same parties was pending in Utah. The trial court granted Spectrum's motion to set aside the judgment based in part on Neeme's failure to provide notice to Spectrum's attorney in Utah. Neeme challenges the court's decision, asserting notice was not required because the Utah attorney had neither formally nor informally appeared in the present case. For the following reasons, we affirm.

## BACKGROUND

¶ 2 In 2007, Spectrum and Neeme entered into a contract in which Neeme agreed to develop hardware and software in Arizona for Spectrum's jet aircraft located in Utah. In mid–2008, the parties began disputing whether Neeme had performed its obligations under the contract. The parties' attempts to resolve their differences were unsuccessful. When Spectrum stopped making payments to Neeme several months later, the parties tried again to negotiate a resolution. However, near the end of June 2009, Neeme warned Spectrum that it intended to file suit in Arizona on July 1 if the dispute remained unresolved.

¶ 3 On June 29, 2009, Spectrum filed a declaratory judgment action against Neeme in Utah, alleging Spectrum overpaid Neeme on the contract and Neeme failed to provide services it was obligated to perform. At that stage of the litigation, Spectrum was not represented by legal counsel, as the law firm that had been representing Spectrum could not handle the litigation due to an ethical conflict. Neeme filed a motion to dismiss Spectrum's complaint on July 10. Spectrum then hired new counsel in Utah, the law firm of Hill, Johnson & Schmutz, L.C. ("Hill"), which filed a notice of appearance in the Utah action on July 21.

¶ 4 In the meantime, Neeme had filed its own complaint against Spectrum in Arizona on July 1, 2009, alleging breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment, stemming from Spectrum's failure to pay Neeme approximately $750,000 for aeronautical engineering services under the contract. The next day, Neeme served the complaint and summons on Spectrum's statutory agent in Delaware, Corporation Service Company.

¶ 5 When Spectrum failed to respond to the complaint within thirty days, Neeme filed an application for entry of default on August 4, 2009. Neeme mailed copies of the application to Spectrum's statutory agent, Spectrum's principal place of business in California, and Spectrum's office in Utah. Spectrum did not file an answer or otherwise defend, and Neeme filed a motion for default judgment. On August 31, the trial court

entered default judgment against Spectrum in the amount of $750,009 plus accruing interest and costs in the amount of $569.25.

¶ 6 On September 15, 2009, Spectrum's Arizona counsel moved to set aside entry of default and default judgment in the Arizona action pursuant to Arizona Rules of Civil Procedure ("Rule") 55(c) and 60(c)(1), respectively. In support of its motion, Spectrum argued, *inter alia*, that Neeme violated the requirements of Rule 55(a)(1)(ii) by failing to notify Hill of the application for entry of default. Spectrum also asserted that its failure to respond to the complaint was justified based on "excusable neglect" because its Chief Executive Officer erroneously believed that Hill was handling the Arizona action. After oral argument, the court ruled as follows:

> The Court is going to grant the motion to set aside, partly base[d]—I think Rule 55(a) is clear and it doesn't have the limitations that [Neeme] here is arguing. It's clear that [Neeme] knew that [Spectrum] was represented by counsel in Utah, [and] that counsel was not furnished a copy of the application requesting the entry of default. So the provisions of [Rule] 55(a)(1)(ii) were not met.

The court also found, independent of Neeme's failure to notify Hill, that excusable neglect, mistake, or inadvertence justified setting aside the default. The court subsequently entered a formal order granting the motion to set aside, and Neeme timely appealed.[1]

## DISCUSSION

### I. Sufficiency of the Notice to Spectrum

■■■■ ¶ 7 When we interpret a court rule, we seek to apply recognized principles of statutory construction. *Ruiz v. Lopez*, 225 Ariz. 217, 220, ¶ 12, 236 P.3d 444, 447 (App. 2010) (finding that the same rules of con-

struction apply to both statutes and rules). As such, we interpret procedural rules according to their plain meaning unless the language is ambiguous or would create an absurd result. *Harper v. Canyon Land Dev., L.L.C.*, 219 Ariz. 535, 536, ¶ 4, 200 P.3d 1032, 1033 (App.2008). In interpreting a rule, we also consider the rule's context, effect, spirit, and purpose. *Ruiz*, 225 Ariz. at 221, ¶ 12, 236 P.3d at 448. Additionally, "because default judgments are not favored, the same liberality that governs the application of the rules to a particular case should govern the interpretation of the rules, resolving any doubts in favor of the interpretation that facilitates deciding cases on their merits." *Harper*, 219 Ariz. at 537, ¶ 4, 200 P.3d at 1034 (citing *Richas v. Superior Court*, 133 Ariz. 512, 514, 652 P.2d 1035, 1037 (1982)) ("[T]he trial court has broad discretion to resolve all doubts in favor of setting aside the entry of default of the judgment by default[.]"). Although we generally review the trial court's denial of a motion to set aside an entry of default or default judgment for an abuse of discretion, we review the interpretation of court rules de novo. *Id.*

■■■ ¶ 8 Rule 55(a) establishes notification procedures a party must follow when seeking entry of default against an opposing party that has failed to plead or otherwise defend in a timely manner. It provides in relevant part as follows:

> (1) *Notice.*
>
> (i) To the Party. When the whereabouts of the party claimed to be in default are known by the party requesting the entry of default, a copy of the application for entry of default shall be mailed to the party claimed to be in default.
>
> (ii) Represented Party. When a party claimed to be in default is *known by the party requesting the entry of default to be represented by an attorney, whether or not*

---

1. Spectrum filed a cross-appeal, asserting that the trial court erred when it failed to "explicitly include in its Final Order language setting aside the [entry of] default." Although the final order expressly stated that the default judgment was set aside but did not include the same language as to entry of default, the record reflects that the trial court set aside the entry of default *and* the de-

fault judgment. In the final order, the court specifically granted Spectrum's "Motion to Set Aside Entry of Default and Default Judgment." Additionally, the transcript containing the court's bench ruling states that the trial court granted Spectrum's motion. Therefore, we need not further address Spectrum's cross-appeal.

*that attorney has formally appeared,* a copy of the application shall also be sent to the attorney for the party claimed to be in default. Nothing herein shall be construed to create any obligation to undertake any affirmative effort to determine the existence or identity of counsel representing the party claimed to be in default.

Ariz. R. Civ. P. 55(a) (emphasis in (ii) added). Thus, a party seeking default must mail a copy of the application to the party claimed to be in default if the party's whereabouts are known, and, if that party is known to be "represented by an attorney," a copy of the application must be sent to the attorney.[2] *Id.*

¶ 9 In this case, it is undisputed that Neeme mailed the application for entry of default to Spectrum. It is also undisputed that Neeme was aware that Hill was representing Spectrum in the Utah litigation, which involved the identical parties and the same breach of contract dispute as the Arizona action. Neeme, however, did not send a copy of the application to Hill. The question before us is whether Neeme was obligated, under Rule 55(a)(1)(ii), to provide notice to Hill.

¶ 10 Neeme argues it was not required to notify Hill of the pending application because Hill had not demonstrated an intent to defend the Arizona action by either "formally or informally appearing" on behalf of Spectrum. According to Neeme, an informal appearance occurs when counsel demonstrates an intent to defend, which may be effected by direct communication to the party seeking default. Neeme asserts there was no informal appearance here because "neither [Neeme] nor its Arizona counsel[ ] knew the identity of the counsel that would represent Spectrum in the Arizona lawsuit, if any, until

after default had been entered and had become effective."

¶ 11 We reject Neeme's attempt to read into Rule 55(a)(1)(ii) the requirement that an attorney for a defaulting party must be sent the application for default only if he formally or informally appeared in an action or manifested any particular intention to appear in the action. *See State ex rel. Corbin v. Marshall,* 161 Ariz. 429, 431, 778 P.2d 1325, 1327 (App.1989) (declining to "expand the clear language of [Rule 55(a)(1)(i) ]"); *see also State v. Sepahi,* 206 Ariz. 321, 324, ¶ 15, 78 P.3d 732, 735 (App.2003) ("It is a universal rule that courts will not enlarge, stretch, expand, or extend a statute [or rule] to matters not falling within its express provisions.") (citation omitted). Under the language of the rule, Neeme was required to send a copy of the application *"whether or not that attorney ha[d] formally appeared."* Ariz. R. Civ. P. 55(a)(1)(ii) (emphasis added). As applied here, Hill had not appeared in the Arizona case, nor had it manifested an intent to appear by filing a *pro hac vice* application. However, Neeme was aware that Hill was representing Spectrum in the Utah litigation, which concerned the same contract dispute the parties had been involved in for approximately one year, and formed the basis for the Arizona litigation. Failing to mail a copy of the application for entry of default under those circumstances did not satisfy the notice requirements of the rule.

¶ 12 Moreover, Neeme's failure to notify Hill is inconsistent with the purpose of Rule 55(a), which is to advise defaulting parties and their attorneys of the consequences that may result if they fail to take prompt action in the litigation. *See Corbin,* 161 Ariz. at 431, 778 P.2d at 1327 (Rule 55(a) "specifically describes the manner in which notice is to be given to the party claimed to be in default.");

**2.** Prior to 1985, Rule 55(a) provided as follows:
**55(a) Entry.** When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these Rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter his default.
*See Gen. Elec. Capital Corp. v. Osterkamp,* 172 Ariz. 185, 188, 836 P.2d 398, 401 (App.1992) The prior rule did not require the moving party to notify the defaulting party that default was to be

entered, and consequently, lack of notice was a frequent basis to set aside entry of default. *Id.* at 189, 836 P.2d at 402. In 1985, the rule was amended to its present version, requiring the moving party to take affirmative steps to notify the defaulting party of the application for entry of default. Ariz. R. Civ. P. 55(a). The amended rule was intended to "give[ ] the defaulting party an automatic second chance ... to prevent the default from becoming effective[.]" *Osterkamp,* 172 Ariz. at 189, 836 P.2d at 402.

*Ruiz,* 225 Ariz. at 221–22, ¶¶ 15, 20, 236 P.3d at 448–49 (noting that under Rule 55(a), "a party should receive the best notice practicable under the circumstances" and that the rule was intended to give a defaulting party a "second chance" to avoid the entry of default judgment). Notifying a defaulting party's counsel serves to assist the party in taking appropriate steps to defend against the litigation and facilitates the general preference for resolving cases on their merits. *See Richas,* 133 Ariz. at 514, 652 P.2d at 1037. Additionally, the notification requirement itself is not intended to be burdensome—it simply mandates providing a copy of the application to an attorney known to be representing the defaulting party.

¶ 13 Neeme relies on *City of Phoenix v. Collar, Williams & White Eng'g, Inc.,* 12 Ariz.App. 510, 513, 472 P.2d 479, 482 (1970), to support its position regarding the necessity of an informal appearance. *Collar,* however, involved a different rule, former Rule 55(b)(1), which required the moving party to notify the opposing party of the application for *default judgment* only if the opposing party had "appeared in the action."[3] *Id.* at 512, 472 P.2d at 481. In contrast, Rule 55(a)(1)(ii) governs the notice requirements for *entry of default,* and imposes no "appearance" requirement. *See* Ariz. R. Civ. P. 55(a)(1)(ii). Similarly, Neeme's reliance on *Austin v. State ex rel. Herman,* 10 Ariz.App. 474, 459 P.2d 753 (1969), is misplaced because it also involved notice requirements under Rule 55(b)(1). Nor do we find persuasive the several authorities from other jurisdictions cited by Neeme, because none of the rules discussed in those cases involve language similar to Arizona's notice requirements under Rule 55(a)(1)(ii).

¶ 14 Neeme also asserts that inclusion of the word "shall" in the rule does not automatically make the notice provision mandatory because a rule may be interpreted as permissive if such construction best serves its purpose. Specifically, Neeme argues that the purpose of the rule is to provide notice to the defaulting party, which Neeme argues was "undeniably" provided here as it gave notice to Spectrum's statutory agent, principal place of business, and Spectrum's office in Utah. Neeme's contention, however, fails to recognize that notification of a party's attorney who has been involved in the very dispute in which the parties are engaged advances the rule's goal of ensuring the defaulting party is adequately notified of the pending default. Moreover, interpreting the attorney notification provision as merely permissive would render it meaningless.

¶ 15 Neeme further contends that if we decline to interpret Rule 55(a)(1)(ii) as requiring notice only when a party has formally or informally appeared, it would leave moving parties guessing as to who they should notify and impose a "fundamentally unreasonable burden," which would require notice to "any attorney, residing anywhere, retained by the defaulting party at any time." However, as Neeme acknowledges, the rule does not require searching for potential counsel; rather, it only requires notice to be provided when the moving party has *actual knowledge* that the opposing party is represented by an attorney. Ariz. R. Civ. P. 55(a)(1)(ii) ("Nothing herein shall be construed to create any obligation to undertake any affirmative effort to determine the existence or identity of counsel representing the party claimed to be in default."). Thus, the rule itself precludes any requirement that a party conduct an investigation to determine whether a party is represented by counsel.

¶ 16 Furthermore, we only determine here that the rule requires notice to an attorney who is known to be representing a party *in the dispute,* regardless of whether that attorney has formally appeared or otherwise shown any particular intention to appear in the litigation in the future. Thus, we decline to speculate about potential applications of the rule that are not currently before us, such as: (1) whether a party seeking default would be obligated to send copies of the

---

**3.** This requirement still exists in Rule 55(b)(2), which governs the trial court's ability to enter a default judgment by hearing. It states in pertinent part: "If the party against whom judgment by default is sought has appeared in the action, that party, or, if appearing by representative, that party's representative, shall be served with written notice of the application for judgment at least three days prior to the hearing on such application." Ariz. R. Civ. P. 55(b)(2).

application for entry of default to more than one attorney when multiple law firms are representing the defaulting party; (2) whether the attorney notification requirement applies when a party is represented solely by an in-house attorney who has had no involvement in the dispute that is the subject of the litigation at hand; or (3) whether knowledge that an attorney currently represents the defendant in unrelated matters would trigger the notification requirement. We therefore confine our holding to the facts of this case.

¶ 17 In sum, we conclude that Neeme was obligated to notify Spectrum's Utah counsel even though Hill had not communicated any intent to defend Spectrum in the Arizona litigation. Neeme had knowledge that Spectrum was represented by Hill, which was litigating the same contract dispute present in the Arizona action, and therefore Neeme should have sent Hill a copy of the application for entry of default. Neeme's application for default failed to meet the requirements of Rule 55(a)(1)(ii) and thus entry of default was ineffective.

█ ¶ 18 Entry of default and the resulting default judgment are void where a party moving for application of entry of default fails to adequately notify the opposing party pursuant to Rule 55(a). *See Ruiz*, 225 Ariz. at 223, ¶ 21, 236 P.3d at 450. In *Ruiz*, the plaintiff mailed an application for entry of default to the defendant, who resided in a large apartment complex, but failed to include an apartment number in the mailing address. *Id.* at 220, ¶ 11, 236 P.3d at 447. The plaintiff asserted the notice complied with the requirements of Rule 55(a)(1)(i), which requires a moving party to mail a copy of the application for entry of default to the party claimed to be in default. *Id.* We disagreed, holding that the application was unlikely to reach the defendant and thus violated the notice provisions of Rule 55(a)(1)(i). *Id.* at 222, ¶ 15, 236 P.3d at 449. As a result, we determined that the violation of Rule 55(a)(1)(i) rendered the resulting default judgment void because "Rule 55 . . . allow[s]

entry of default only upon adequate notice to the defaulting party." *Id.* at ¶ 18. We therefore held that the trial court was required to set aside the judgment under Rule 60(c)(4). *Id.* at 223, ¶ 21, 236 P.3d at 450.

█ ¶ 19 When a party seeking relief demonstrates that an entry of default or default judgment is void, the trial court must set aside the default judgment. *See Corbet v. Superior Court*, 165 Ariz. 245, 248, 798 P.2d 383, 386 (App.1990) (stating that a superior court has "no discretion to refuse to vacate [a void] entry of default"); *see also* Daniel J. McAuliffe, *Arizona Civil Rules Handbook* 646 (2009) ("By clear and necessary implication, failure to serve a copy of the Application for Entry of Default, where required under amended Rule 55(a), will be a sufficient basis for setting the default aside.").

█ ¶ 20 Here, Spectrum adequately demonstrated that Neeme failed to adhere to the notice requirements of Rule 55(a)(1)(ii), and therefore the judgment was void. As such, the trial court was required to set aside the default judgment. Although Neeme asserts that we cannot set aside the judgment absent a showing of excusable neglect pursuant to Rule 60(c)(1), Rule 60(c)(*l* )'s "requirement[s] do[ ] not apply to a void default judgment or entry of default." *See Corbet*, 165 Ariz. at 248, 798 P.2d at 386. Accordingly, we hold that the trial court did not err when it granted Spectrum's motion to set aside pursuant to Rule 55(a)(1)(ii).[4]

## II. Unclean Hands

█ ¶ 21 Neeme also argues that the trial court erred by granting Spectrum's motion because Spectrum acted with unclean hands "when it initiated the Utah action in an attempt to beat Neeme to the courthouse and force Neeme to litigate in a foreign forum." We review a trial court's application of the doctrine of unclean hands for an abuse of discretion. *Manning v. Reilly*, 2 Ariz.App. 310, 314, 408 P.2d 414, 418 (1965).

4. Based on this conclusion, we need not address whether the court erred in finding that Spectrum was entitled to relief from the judgment under Rule 60(c)(1). *See Ariz. Water Co. v. Ariz. Dep't of Water Res.*, 208 Ariz. 147, 152 n. 10, ¶ 18, 91 P.3d 990, 995 n. 10 (2004) (an appellate court may affirm a trial court's judgment on any basis supported by the record).

¶ 22 The doctrine of unclean hands is an equitable defense to a claim seeking equitable relief. *Ayer v. Gen. Dynamics Corp.*, 128 Ariz. 324, 326, 625 P.2d 913, 915 (App.1980). The doctrine does not apply to bar a claim, however, unless "the act of unconscionable conduct on the part of the plaintiff relate[s] . . . to the very activity that is the basis of [the] claim." *Barr v. Petzhold*, 77 Ariz. 399, 407, 273 P.2d 161, 166 (1954); *see also Phoenix Orthopaedic Surgeons, Ltd. v. Peairs*, 164 Ariz. 54, 59, 790 P.2d 752, 757 (App.1989), *disapproved on other grounds by Valley Med. Specialists v. Farber*, 194 Ariz. 363, 982 P.2d 1277 (1999).

¶ 23 We conclude that the doctrine is inapplicable here because Spectrum's alleged unconscionable conduct does not relate to the same activity that is the basis of its claim. To prevail on a claim of unclean hands, a party must prove that "[t]he dirt upon [the opposing party's] hands [is] his bad conduct *in the transaction complained of.* If he is not guilty of inequitable conduct *toward the* [party asserting unclean hands] in that transaction, his hands are as clean as the court can require." *Smith v. Neely*, 93 Ariz. 291, 293, 380 P.2d 148, 149 (1963) (citation omitted). Here, Spectrum's alleged inequitable act of filing a lawsuit in Utah did not cause Neeme to fail to follow the notice requirement set forth in Rule 55(a)(1)(ii). Therefore, the doctrine of unclean hands is not an equitable defense that could be properly asserted by Neeme in this case.

### III. Attorneys' Fees

¶ 24 Neeme and Spectrum request attorneys' fees on appeal pursuant to Arizona Revised Statutes section 12–341.01 (Supp. 2010). We deny Neeme's request and defer Spectrum's request to the trial court pending resolution of this matter on the merits. *See Tierra Ranchos Homeowners Ass'n v. Kitchukov*, 216 Ariz. 195, 204, ¶ 37, 165 P.3d 173, 182 (App.2007).

### CONCLUSION

¶ 25 For the foregoing reasons, we conclude that Neeme failed to comply with the notice requirements of Rule 55(a)(1)(ii) because Neeme did not provide a copy of the application for default to Spectrum's attorney. Accordingly, we affirm the trial court's order setting aside the entry of default and default judgment.

CONCURRING: DANIEL A. BARKER, Presiding Judge and MARGARET H. DOWNIE, Judge.