NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

CELSO B., CERENA G., *Appellants*,

*v.*

DEPARTMENT OF CHILD SAFETY, C.B., S.M., *Appellees*.

No. 1 CA-JV 21-0002
FILED 7-20-2021

Appeal from the Superior Court in Maricopa County
No. JD31205
The Honorable Julie Ann Mata, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm PLLC, Scottsdale
By Christopher Stavris
*Co-counsel for Appellant Celso B.*

Czop Law Firm PLLC, Higley
By Steven Czop
*Co-counsel for Appellant Celso B.*

Denise L. Carroll Esq., Scottsdale
By Denise L. Carroll
*Counsel for Appellant Cerena G.*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Maria Elena Cruz joined.

---

**H O W E**, Judge:

**¶1**        Cerena G. ("Mother") appeals the juvenile court's order terminating her parental rights to S.M., born August 2015, and C.B., born September 2018, and finding that E.B., born September 2020, was dependent. Celso B. ("Father") also appeals the juvenile court's order terminating his parental rights to C.B. Father does not appeal the juvenile court's dependency finding on E.B., and S.M.'s father is not a party in this appeal. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

**¶2**        Mother began using methamphetamine when she was sixteen years old and has continued using it for nearly a decade and a half. The Department first became involved with her in March 2015 when it received a report that she had used methamphetamine while pregnant with S.M. The Department petitioned for dependency for S.M. as to Mother shortly after S.M. was born substance-exposed. Mother completed the required services, and the Department dismissed the petition.

**¶3**        A couple years later, Mother used methamphetamine while pregnant with C.B. During the Department's ensuing investigation, it learned that she had an order of protection against Father because he had—in S.M.'s presence—kicked her in the stomach while she was pregnant The Department removed S.M. and she was adjudicated dependent as to Mother. A few months later, C.B. was born substance-exposed, removed from Mother and Father, and adjudicated dependent as to both. The Department placed S.M. and C.B. with their paternal aunt and uncle and appointed them a guardian ad litem.

**¶4**        The Department offered Father domestic violence counseling and other services. The Department offered Mother a psychological

2

evaluation, substance-abuse testing, and substance-abuse treatment. Mother engaged in substance-abuse testing and treatment inconsistently and was deemed "resistant to treatment." She briefly attended her sessions and was moved from intensive outpatient care and placed in recovery maintenance. Her evaluating psychologist diagnosed her with amphetamine abuse in partial remission and concluded that her ability to parent depended on her sobriety, suggesting she be sober for eight to twelve months before she could safely care for her children. Mother and Father completed the offered services, and the Department returned the children to their care in April 2019.

**¶5**        About a month later, however, Mother relapsed. At the same time of her relapse, Father committed domestic violence against her in front of the children and locked her and the children out of their apartment. He was subsequently charged with misdemeanor domestic violence. The Department again removed the children and placed them with their paternal aunt and uncle. The Children's guardian ad litem then moved to terminate Mother's rights to S.M under the fifteen-month out-of-home placement ground, A.R.S. § 8–533(B)(8)(c), and S.M. and C.B. under the nine-month out-of-home placement, A.R.S. § 8–533(B)(8)(a), and substance abuse grounds, A.R.S. § 8–533(B)(3), and moved to terminate Father's rights to C.B. on the nine-month out-of-home placement ground, A.R.S. § 8–533(B)(8)(a).

**¶6**        Although the children had been removed from Mother's and Father's custody and Mother was once again pregnant, Mother and Father continued to commit acts of domestic violence against each other. Despite their violent relationship, Mother and Father disregarded numerous orders of protection and traveled together to Washington state in August 2020. The following month, E.B. was born substance-exposed and Mother and Father quashed their orders of protection against one another. The Department removed E.B. and placed him in a licensed foster home.

**¶7**        The juvenile court held a joint severance and dependency hearing in November 2020. At the onset, Father pled "no contest" to the dependency of E.B. The Department's case manager testified that during the dependency Mother continued to test positive for methamphetamine, including while pregnant with E.B.; was not compliant with her drug treatment for over 20 months; and had not participated in urine analysis from August 2019 through August 2020. The case manager was concerned that the children would continue to witness domestic abuse even though Mother no longer lived with Father, because Mother still depended on Father for assistance with rent money. She stated that because determining

3

the nature of Mother's and Father's relationship throughout the almost five-year case was difficult, she was concerned that Mother and Father would continue or rekindle their violent, intimate relationship. The case manager further testified that S.M. and C.B. lived with an adoptive placement and that placement was meeting their needs. During the case manager's testimony, the children's guardian ad litem moved to amend the initial termination motion to include the fifteen-month out-of-home placement grounds for C.B. The court granted the motion.

¶8        Mother testified that her substance abuse caused the acts of domestic violence between herself and Father, that Father often acted in self-defense, and that she lied to a judge during an order of protection hearing. She said that while Father and she were friends and were learning to co-parent, they were no longer in an intimate relationship. When asked about her previous relapses, she said that she had relapsed because friends or the Department forced her into treatment before she was ready to be sober. She said that she now wanted to be sober to better herself and therefore the treatment beginning the month before the severance hearing was different. She further testified that she was working and able to support herself.

¶9        In a written minute entry, the court terminated Mother's parental rights to S.M. and C.B. on the grounds of substance abuse under A.R.S. § 8–533(B)(3). The juvenile court found that Mother had abused substances since she was sixteen and while she had moments of sobriety, she often relapsed and all three children were born substance-exposed to methamphetamines. It further found that while she loves her children, her drug use often incited domestic violence and that she had lied to the court to retain custody of her children. It also found that despite reasonable efforts, ongoing dependence and severance cases, and five years of services offed by the Department, Mother had been unable to maintain extended sobriety.

¶10        The juvenile court next addressed the time in out-of-home placement ground. The court made findings and conclusions as to each factor under the nine months and fifteen months grounds but did not state whether the guardian ad litem had met its burden under each specific grounds. The juvenile court, however, concluded that "[b]ased on the above, the [guardian ad litem] has met its burden of proof as to this ground for termination against Mother and Father."

¶11        The juvenile court then found that termination was in the children's best interest. It found that S.M.'s and C.B.'s current placement,

the paternal aunt and uncle, wanted to adopt the children and had cared for the children most of their time in care. The court found that the children would benefit from the termination and that maintaining the parent-child relationship would be detrimental to the children. The court further found E.B. dependent. Father and Mother timely appealed.[1]

## DISCUSSION

### I.    Termination of Father's Parental Rights to C.B.

¶12        Father argues that the juvenile court failed to make specific conclusions of law to support the statutory grounds for termination. Under A.R.S. § 8–538(A) every juvenile court order terminating the parent-child relationship "shall be in writing and shall recite the findings on which the order is based." Findings of fact and conclusions of law shall be sufficiently specific to enable the appellate court to provide effective review. *Ruben M. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 236, 240 ¶ 25 (App. 2012). This court considers portions of the juvenile court's ruling in the context of the whole, *see State v. May*, 210 Ariz. 452, 455 ¶ 8 n.1 (App. 2005), and reviews the sufficiency of factual findings and legal conclusions *de novo, see Francine C. v Dep't of Child Safety*, 249 Ariz. 289, 296 ¶ 14 (App. 2020).

¶13        Here, the juvenile court terminated Father's rights based on C.B.'s out-of-home placement for more than nine months. A.R.S. § 8–533(B)(8)(a). We agree with Father's concession that the court's ruling provided the ultimate facts and legal conclusions for each statutory element. Because this court can effectively review the ultimate facts and legal conclusions reached as to each element, the findings are sufficient. *See Francine C.*, 249 Ariz. at 299 ¶ 27 (stating that where the record is so clear that the appellate court does not need the aid of a specific conclusion, the court may waive a purported defect on the ground that the error was not substantial in that case).

¶14        Father nonetheless argues that the juvenile court's language in the ruling that the "[guardian ad litem] has met its burden of proof as to this ground for termination against Mother and Father" created confusion whether the court terminated Father's rights to C.B. on either the nine-months or fifteen-months in out-of-home placement grounds or both. The juvenile court's factual findings, specific conclusions of law, and general headings, however, limited termination of Father's parental rights

---

[1]        We received an identical termination order issued May 2021 and the parents also timely appealed from that order.

to C.B. to the nine-month in out-of-home placement ground and allowed for effective appellate review. *See Ruben M.*, 230 Ariz. at 240 ¶ 25.

## II.     Termination of Mother's Parental Rights to S.M. and C.B.

**¶15**          Mother argues that the court erred in terminating her rights and finding that termination was in the children's best interests. A juvenile court's termination determination is reviewed for an abuse of discretion. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47 ¶ 8 (App. 2004). To terminate parental rights, the juvenile court must find by clear and convincing evidence the existence of at least one statutory ground under A.R.S. § 8−533 and by a preponderance of the evidence that termination would be in the child's best interests. A.R.S. § 8–533(B); Ariz. R.P. Juv. Ct. 66(C); *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 286 ¶ 15 (App. 2016). Because the juvenile court is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts, *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334 ¶ 4 (App. 2004), we will affirm a termination decision unless no reasonable evidence supports it, *Xavier R. v. Joseph R.*, 230 Ariz. 96, 100 ¶ 11 (App. 2012).

### 1.   Statutory Grounds for Termination of Mother's Parental Rights

**¶16**          To terminate parental rights under A.R.S. § 8–533(B)(3), a court must find that: (1) the parent has a history of chronic abuse of controlled substances or alcohol; (2) the parent is unable to discharge parental responsibilities because of her chronic abuse of controlled substances or alcohol; and (3) reasonable grounds exist to believe that the condition will continue for a prolonged and indeterminate period. *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 377 ¶ 15 (App. 2010). Generally, a parent's "temporary abstinence from drugs and alcohol does not outweigh [her] significant history of abuse or [her] consistent inability to abstain during [the] case." *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287 ¶ 17 (App. 2016) (quoting *Raymond F.*, 224 Ariz. at 379 ¶ 29). "Children should not be forced to wait for their parent to grow up." *Id.* The court must consider a child's interest in a fit parent as paramount to a parent's battle with addiction. *Id.*; *see also Raymond* F, 224 Ariz. at 383 ¶ 29.

**¶17**          Here, Mother has abused methamphetamine since she was sixteen years old. While she has had periods of sobriety, she has relapsed several times. All her children were born substance-exposed to methamphetamine despite having received services. She has tested positive for methamphetamine despite knowing that her use of methamphetamine

would likely lead to her parental rights being severed and has not complied with the Department's drug testing requirements for much of the case. While abusing substances, she has repeatedly engaged in domestic violence with Father, often risking harm to the children. Furthermore, Mother's evaluating psychologist opined that Mother could properly care for her children only if she maintained her sobriety. Mother has not been able to remain sober for the length of time her evaluator suggested. When the children were returned to her care during a period of sobriety, she soon relapsed, failed to use sobriety support services for almost a year, and resisted substance abuse treatment. Reasonable evidence supports the juvenile court's termination of Mother's parental rights under the substance abuse grounds.

**¶18**        Mother contends, however, that the court erred in determining that her chronic drug abuse is likely to continue because she had not tested positive in the months leading up to the severance hearing and because she was engaged in substance abuse treatment. Although Mother made efforts to achieve and maintain sobriety in the months immediately preceding the severance hearing, her current sobriety does not outweigh her significant history of drug abuse or her inability to remain sober during much of the case, including when her children were returned to her care. *See Jennifer S.*, 240 Ariz. at 288 ¶ 25. Mother's failure to remedy her drug abuse throughout the Department's five-year involvement, while knowing the termination of her parental rights to the children was imminent, supports the conclusion that she has not overcome her dependence on drugs. *See Raymond F.*, 224 Ariz. at 379 ¶ 29. Because the court did not err in terminating Mother's parental rights under A.R.S. § 8–533(B)(3) we need not consider the other statutory grounds for termination. *Raymond F.*, 224 Ariz. at 377 ¶ 14.

### 2.  Best Interests

**¶19**        If the juvenile court finds grounds for termination, it then must determine if termination of the parent-child relationship is in the children's best interests by a preponderance of the evidence. A.R.S. § 8–533(A). The Department can establish best interests by showing either that the child will benefit from termination of the relationship or that the child would be harmed by continuing the parental relationship. *Oscar O.*, 209 Ariz. at 334 ¶ 6. Relevant factors include whether the current placement is meeting the child's needs, an adoption plan is in place, and the child is adoptable. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3–4 ¶ 12 (2016). The court presumes that the interests of the parent and child have diverged once one

of the statutory grounds for termination has been proved. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150 ¶ 12 (2018).

**¶20**        The juvenile court considered the totality of the circumstances and determined that the children would benefit from the termination and that the children would have incurred a detriment if reunited with Mother. Both S.M. and C.B. had lived in adoptive placement for long periods of time, have formed strong bonds with their placement, and their placement has provided for their needs. Reasonable evidence supports the juvenile court's conclusion.

### III.    E.B. Dependent as to Mother

**¶21**        The court found E.B. dependent as to Mother on the ground of neglect. We review the superior court's dependency order for an abuse of discretion, accepting its findings of fact unless clearly erroneous and affirming a dependency finding unless unsupported by reasonable evidence. *Joelle M. v. Dep't of Child Safety*, 245 Ariz. 525, 527 ¶ 9 (App. 2018). A child may be dependent because of a parent's neglect. A.R.S. § 8–201(15)(a)(iii). Neglect includes a parent's inability or unwillingness to supervise a child, causing an unreasonable risk of harm to the child's health or welfare. A.R.S. § 8–201(25)(a).

**¶22**        Reasonable evidence supports the court's finding. E.B. was substance-exposed when born. Mother has not been able to maintain her sobriety and has neglected her child. Furthermore, Mother's engagement in domestic violence supports affirming the juvenile court's findings. The juvenile court did not err in finding E.B. dependent.

### CONCLUSION

**¶23**        For the foregoing reason, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA