NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SAMANTHA O., *Appellant*,

*v.*

JEFFREY F., MINDY F., DEPARTMENT OF CHILD SAFETY, H.O., J.O.,
*Appellees*.

No. 1 CA-JV 21-0322
FILED 6-9-2022

Appeal from the Superior Court in Maricopa County
Nos.  JD35632
JS19942
The Honorable David O. Cunanan, Judge

**AFFIRMED**

COUNSEL

Thomas Vierling Attorney at Law, Phoenix
By Thomas A. Vierling
*Counsel for Appellant*

Jeffrey M. Zurbriggen PC, Phoenix
By Jeffrey M. Zurbriggen
*Counsel for Appellees Jeffrey F., Mindy F.*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

---

Judge Randall M. Howe delivered the decision of the court, in which Presiding Judge Jennifer B. Campbell and Judge James B. Morse Jr. joined.

---

H O W E, Judge:

¶1 Samantha O. ("Mother") appeals the juvenile court's termination of her parental rights to her children H.O. and J.O. Jeffrey and Mindy F., the familial foster family ("Foster Family"), filed an answering brief along with the Department of Child Safety. For the reasons stated below, we affirm.[1]

## FACTS AND PROCEDURAL HISTORY

¶2 We view the facts in the light most favorable to sustaining the juvenile court's order. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 2 ¶ 2 (2016). Mother has had a long history with mental illness and drug use, having been first diagnosed with bipolar disorder at ten and having used marijuana since she was nine. While pregnant with H.O., Mother used heroin daily, causing H.O. to be born substance-exposed in January 2018, and requiring H.O. to remain in the neonatal intensive care unit for over two months with severe withdrawal symptoms. The Department petitioned for H.O.'s out-of-home dependency based on Mother's mental health, substance abuse, and domestic-violence issues, and the court found H.O. dependent.

¶3 The Department provided Mother with reunification services including psychological and psychiatric assessments, medications and medication monitoring, domestic-violence education and classes, group and individual counseling, inpatient hospitalization, substance-abuse testing, methadone treatment, and visitation. At her first psychological evaluation, the psychologist diagnosed her with bipolar disorder and determined that H.O. was at risk of harm if returned to her care. In April 2019, Mother relapsed with heroin. A few months later, she gave birth to J.O., who was born substance-exposed to methadone and hospitalized for three weeks with withdrawal symptoms. The Department petitioned for dependency based on mental health, substance abuse, and domestic

---

[1] John O., the children's father, is not a party to this appeal.

violence, and the court found J.O. dependent. The Department also moved to terminate Mother's parental rights to H.O., which the court denied to give Mother opportunities to reunify with her children.

¶4 Despite these additional opportunities and continued services, Mother was hospitalized six times for mental-health issues during the dependency, relapsed with various substances, and missed drug-testing appointments. When the Department did return the children to Mother's care in June 2020, the Department removed them again less than two weeks later after Mother engaged in domestic violence with a boyfriend in front of them.

¶5 In a second psychological evaluation in August 2020, the psychologist found that Mother could not live on her own stably and concluded that at least a year of additional services would be required before independence could be considered. He also concluded that Mother had a serious mental-health issue and that if she did not keep her medication regiment consistent, she would continue to have manic episodes coupled with depressive or psychotic episodes. Yet Mother failed to keep up with her medication regiment during the latter portion of 2020. As a result, H.O.'s and J.O.'s foster family moved in February 2021 to terminate her parental rights based on time in out-of-home placement and the mental illness/substance-abuse grounds.

¶6 At the termination hearing, Mother testified that she had been sober since June 2019. She also testified that she has made progress in managing her mental health and domestic-abuse issues. When asked about her housing and current roommate, she denied that he had a history of domestic violence. When pressed in cross-examination, she said that while they had been romantically involved, she had broken it off about 30 days ago because her psychologist said it would make getting her children back easier. The Department's case manager then testified that Mother had not remedied her mental illness and domestic-violence issues, evidenced by her recent long-term relationship—romantically or only as a roommate—with someone that had a history of domestic violence. She also testified that the children would benefit from the permanency that their foster family could offer and, alternatively, would suffer harm in continued, long-term foster care with no foreseeable possibility of returning to Mother's care.

¶7 Mother's evaluating psychologist testified that Mother's mental-health issues would have to be managed for the rest of her life and that her bipolar disorder is considered a serious mental illness. He suggested that Mother needed a psychiatric prescriber, a counselor or

therapist, and perhaps a case manager to communicate and update one another. He also concluded that even after four years of services, Mother was unable to reunify with her children and would remain so for the foreseeable future. Mother's psychologist did not give an opinion on the termination proceedings and testified that Mother's continued therapy would be vital for her mental health. She also expressed concern that Mother had entered another romantic relationship with someone known to have a history of domestic violence.

¶8  The juvenile court terminated Mother's parental rights under the 15 months' time in out-of-home placement grounds. It found that while Mother had made steps to improve her substance abuse and mental-health issues, she could not properly care for her children because of her mental illness and her failure to identify threats to her safety and to the safety of her children. The court found that the children would benefit from the permanency their foster family provided and that they would be harmed without Mother's ability to parent in the near future. Mother timely filed a notice of appeal.

## DISCUSSION

¶9  Court-appointed counsel for Mother declared that he found no non-frivolous issues to raise on appeal. *See Denise H. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 257, 260 ¶ 9 (App. 1998) (". . . in rare cases in which no arguable appellate issues exist, we see nothing in § 8–236(D) that would require appointed counsel to file a frivolous brief."). Mother filed a pro se brief arguing that her mental-health issues do not affect her ability to parent her children or to keep them safe from harm. This court reviews a juvenile court's termination determination for an abuse of discretion. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47 ¶ 8 (App. 2004). Because the juvenile court is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts, *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334 ¶ 4 (App. 2004), we will affirm a termination decision unless no reasonable evidence supports it, *Xavier R. v. Joseph R.*, 230 Ariz. 96, 100 ¶ 11 (App. 2012).

¶10  Foster Family argues that Mother's failure to comply with Arizona Rule of Civil Appellate Procedure ("ARCAP") 13 in her opening brief has waived any legal issue for review. While Mother's opening brief manifestly violates ARCAP 13 and that failure to comply with ARCAP 13 normally serves as a waiver of any issues a litigant may have wished to submit for this court's review, *Ramos v. Nichols*, No. 1 CA-CV 21-0322, 2022 WL 211179, at *2 (Ariz. Ct. App. Jan. 25, 2022), we refuse to apply waiver

here because the best interests of the children subject to the termination order trumps the consequences ordinarily imposed for violating procedural rules, *see Nold v. Nold*, 232 Ariz. 270, 273 ¶ 10 (App. 2013).

**¶11**     As to the merits, the juvenile court did not err in terminating Mother's parental rights to H.O. and J.O. To terminate parental rights, the juvenile court must find by clear and convincing evidence the existence of at least one statutory ground under A.R.S. § 8−533 and by a preponderance of the evidence that termination would be in the child's best interests. A.R.S. § 8–533(B); Ariz. R.P. Juv. Ct. 66(C); *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 286 ¶ 15 (App. 2016).

**¶12**     To terminate parental rights under the 15 months in an out-of-home placement ground, the juvenile court must find clear and convincing evidence that (1) the Department made diligent efforts to provide appropriate reunification services; (2) the child has been in an out-of-home placement for a cumulative total period of 15 months or longer under court order; (3) the parent has been unable to remedy the circumstances that caused the child to be in an out-of-home placement; and (4) a substantial likelihood exists that the parent will be incapable of exercising proper and effective parental care and control in the near future. A.R.S. § 8–533(B)(8)(c). Additionally, the court must determine if termination of parental rights is in a child's best interests, or if the child will benefit from the termination or will be harmed if the relationship continues. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150 ¶ 13 (2018).

**¶13**     Reasonable evidence supports the juvenile court's termination of Mother's parental rights and its best interests finding. The children have been in out-of-home placement for more than 15 months and the Department has diligently provided Mother with services. Despite the services provided, Mother still requires life-long mental health care for her bipolar disorder. Although life-long mental health challenges do not in and of itself require termination of Mother's rights, she has not shown that she can manage her prescriptions and mental health while maintaining a safe home, much less doing so while caring for two young children who will demand a great deal of her time, energy, and patience. Indeed, when the Department returned the children to her care, she became overwhelmed and engaged in domestic violence within 10 days. Accordingly, no witness recommended the return of Mother's children, and she continues to surround herself with individuals with a history of domestic violence. Foster Family, on the other hand, has provided for the children's health and safety for the past two and four years respectively and is poised to keep doing so. Mother's primary arguments on appeal merely ask this court to

reweigh the evidence, which we will not do. *See Williams v. King*, 248 Ariz. 311, 317 (App. 2020).[2]

¶14        Mother also argues that her trial counsel was ineffective because she did not call additional witnesses to testify to her improvement during the dependency. Assuming that a parent may bring an ineffective assistance of counsel claim in a termination proceeding, Mother's counsel was not ineffective. The bar to establish ineffective assistance of counsel in a termination proceeding is higher than the standard in criminal cases, *Royce C. v. Dep't of Child Safety*, 252 Ariz. 129, 137 ¶ 24 (Ariz. App. 2021), and requires a court to look at the whole proceeding to determine whether counsel's conduct undermined the proceeding's "fundamental fairness" to cast doubt on the proceeding's protection of an individual's rights, *id*. at 136 ¶ 20. Here, witnesses testified that Mother had improved during the dependency. Indeed, based on that testimony the juvenile court rejected the substance-abuse grounds. Despite her improvement, however, no witness suggested the children could be returned to Mother in the near future due to her mental health and domestic-violence issues, and she does not assert that any of her additional witnesses would say that she could properly and appropriately parent the children at the time of termination. Accordingly, we do not find that counsel's actions undermined the fundamental fairness of the proceedings. *See id*. at 136–37 ¶¶ 20–24.

## CONCLUSION

¶15        For the reasons stated, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:   AA

---

[2]     Mother's opening brief included exhibits on appeal that were not presented to the juvenile court. In an earlier order, we denied Foster Family's motion to strike Mother's opening brief on this basis but reiterated that this court will not consider facts or evidence outside the record on appeal. *State v. Schackart*, 190 Ariz. 238, 247 (1997).